UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Richard and Loraine Gilroy, and the marital community comprised thereof,

Plaintiffs,

v.

Seabourn Cruise Line, Ltd. d/b/a Seabourn Cruise Line,

Defendant.

CASE NO. C12-107Z

ORDER

THIS MATTER comes before the Court on the motion of Defendant Seabourn Cruise Line Limited ("Seabourn") to compel arbitration, docket no. 6, Plaintiffs' motion for partial summary judgment, docket no. 14, and Seabourn's motion to strike, docket no. 20. Having reviewed all papers filed in support of, and in opposition to, each motion, the Court enters the following order.

**BACKGROUND**

The focus of this dispute is Seabourn's refusal to provide Plaintiffs a credit or refund when Plaintiffs cancelled their reservations on a cruise originally bound for Egypt. Through their travel

ORDER -1

agent, J.W. North Signature Travel ("North"), Plaintiffs booked a cruise on the *Seabourn Sojourn* at a cost of $23,900.00. Pls.' Compl., docket no. 1, at ¶ 2.2. Ms. Gilroy's desire to travel to Egypt was Plaintiffs' primary motivation for embarking on the cruise. Pls.' Compl., docket no. 1, at ¶ 2.5.

Following a U.S. State Department warning against travel to Egypt, on March 13, 2011, Seabourn canceled the Egyptian portion of the *Seabourn Sojourn's* itinerary. Pls.' Compl., docket no. 1, at ¶ 2.7–2.9. On March 17, 2011, Mr. Gilroy sent a letter to Seabourn attempting to cancel Plaintiffs' reservation and requesting a credit toward a future cruise with the original itinerary or a refund. Gilroy Decl., docket no. 14-1, Ex. B at 13. Pursuant to its guest cancelation policy, Seabourn denied the request for a credit or refund. Gilroy Decl., docket no. 14-1, Ex. C at 17–18.

## DISCUSSION

At issue in this case is whether Plaintiffs' claims related to Seabourn's cancelation fees can be heard before this Court or whether Plaintiffs are bound by an arbitration clause that appeared in both pre-cruise documentation, Kidd Decl., docket no. 9, Ex. A at 19, as well as final cruise documentation, Kidd Decl., docket no. 10, Ex. F at 40. Plaintiffs argue that their relationship with Seabourn was international in nature and included relations with one or more foreign states sufficient to trigger application of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958) ("Convention"). Plaintiffs argue that because the more stringent requirements of the Convention have not been met, the arbitration clause is unenforceable. Plaintiffs do not contest applicability of the FAA.

**A. Application of the Convention**

"Most arbitration agreements 'falling under the Convention' arise from international commercial agreements between people or companies from different countries." Matabang v. Carnival Corp., 630 F. Supp. 2d 1361, 1363 (S.D. Fla. 2009). In this case, however, both Plaintiffs and Seabourn are United States citizens,[1] and the statute provides that

> [a]n agreement or award arising out of . . . a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention *unless* that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202 (emphasis added). Thus, while "diversity of national citizenship is not necessary" in order for the Convention to apply, the arbitration agreement must be "part of a contract that is international in character or relates to a foreign state." Matabang, 630 F. Supp. 2d at 1363. The Convention applies to two U.S. citizens "only if significant extra-domestic elements animate [the parties'] relationship and enhance the concerns favoring recognition of foreign arbitration agreements." Id. at 1364.

In determining whether a contract is international in nature, courts look to the parties' relationship: "The true question is whether 'there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself.'" Ensco Offshore Co. v. Titan Marine L.L.C., 370 F. Supp. 2d 594, 597 (S.D. Tex. 2005) (quoting Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 339–40 (2004)); see also

---

[1] Seabourn is a United States citizen for purposes of the Convention because the statute provides that "a corporation is a citizen of the United States if it is incorporated or has its principle place of business in the United States." 9 U.S.C. § 202.

ORDER -3

Amato v. KPMG LLP, 433 F. Supp. 2d 460, 478 (M.D. Pa. 2006) ("[w]ith regard to whether the parties' commercial relationship envisaged performance abroad pursuant to 9 U.S.C. § 202, the relevant jurisdictional inquiry is not whether an arbitration agreement itself envisages performance abroad, but whether the *relationship* out of which the agreement arose envisages performance abroad") order vacated in part on reconsideration, 06CV39, 2006 WL 2376245 (M.D. Pa. Aug. 14, 2006).

The arbitration clause at issue in this case appears in Section 10 of the Cruise Contract and provides:

> All disputes, other than for emotional or bodily injury, illness to or death of a Guest, whether based on contract, tort, statutory, constitutional or other legal rights, including without limitation . . . for any losses, damages or expenses, relating to or in any way arising out of or connected with this Contract or Guest's cruise, with the sole exception of claims brought and litigated in small claims court, shall be referred to and resolved exclusively by binding arbitration pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958) 21 U.S.T. 2517, 30 U.N.T.S. 3, 1970 U.S.T. LEXIS 115, 9 U.S.C. §§ 202-208 (the Convention) and the Federal Arbitration Act, 9 U.S.C. § 1 et seq., (FAA) solely in Miami, Dade County, Florida, U.S.A. to the exclusion of any other forum. You agree the arbitrator shall resolve any dispute as [to] the validity or applicability of this arbitration clause. . . . THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT GUEST OR SEABOURN WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

Kidd Decl., docket no. 7, at ¶ 10; Ex. F at pg. 40.[2]

---

[2] Plaintiffs' contention that Defendant is prohibited from relying on declarations and exhibits related to the cruise documentation has no merit. Carol Kidd acted as a custodian of documents on which Seabourn relies in conducting its business, Def.'s Reply, docket no. 16, at 3, and also served in the same capacity at Seabourn's sister company, Holland America Line. Kidd Decl., docket no. 7, at 1:19. Ms. Kidd's experience provides her with sufficient knowledge of Seabourn's record keeping system. Additionally, Plaintiffs' contention that North did not forward the Cruise Contract, even if true, is not relevant for purposes of this case because "a travel agent's possession of the ticket is sufficient to charge passengers with constructive notice of the ticket

ORDER -4

Plaintiffs argue that because the contract involved transport to and stays in several ports of foreign states, and because the ticket invoked foreign limitation of liability law, performance was envisaged abroad. But "[t]he law is clear that an agreement . . . to apply foreign law does not transform an otherwise domestic commercial relationship into one involving a foreign state." Matabang, 630 F. Supp. 2d at 1364–65. "Arbitration and choice-of-law clauses are created by the parties themselves; they do not represent an independent connection with a foreign country, and do not 'infuse the parties relationship with transnational elements of sufficient moment to invoke [federal] jurisdiction under the Convention.'" Id. at 1365 (citing Reinholtz v. Retriever Marine Towing and Salvage, No. 92–14141–CIV, 1993 WL 414719, at *5 (S.D. Fla. March 21, 1993)). The fact that the cruise ticket contract in this case invoked the Athens Convention, see Kidd Decl., docket no. 10, Ex. F at 39, is an insufficient basis for application of the Convention.

Moreover, time on international water does not establish an international relationship. "'[P]erformance abroad' is more than a simple geographic requirement meaning, for example, beyond the airspace or territorial waters of the United States. Such a formulaic interpretation would raise unnecessary questions about the international character of all manner of domestic legal relationships that incidentally touch upon extra-domestic spaces." Matabang, 630 F. Supp. 2d at 1367 fn.7. In Matabang, the court concluded that time on the high seas was not time abroad, and that an employee's contract to sing on a U.S.-based cruise ship did not involve performance abroad.

---

provisions." Walker v. Carnival Cruise Lines, 63 F. Supp. 2d 1083, 1089 (N.D. Cal. 1999) (internal citations omitted), reconsideration granted on other grounds, 107 F. Supp. 2d 1135 (N.D. Cal. 2000). Moreover, regardless of whether North forwarded the Cruise Contract to Plaintiffs, the Cruise Contract was accepted by Plaintiffs during the online registration process, in which they agreed to the contract terms that included the arbitration clause. Kidd Decl., docket no. 10, Ex. C at 8; Ex. D at 12. Plaintiffs thus had an opportunity to review the arbitration clause.

Id. at 1366; see also Jones v. Sea Tow Servs. Freeport NY Inc., 30 F.3d 360 (U.S. citizens engaged in a purely domestic salvage dispute lacked relation with foreign state necessary to invoke Convention); Ensco, 370 F. Supp. 2d 594 (Convention did not govern contract to salvage a damaged rig ninety miles off the coast of Louisiana). Like the employee in Matabang, Plaintiffs were not required to set foot on foreign soil. See id. at 1366–67. Plaintiffs point to no provision in the contract establishing that Seabourn provided services within destination countries. Even if Seabourn provided services off the cruise ship itself, Plaintiffs cite no authority for the proposition that merely visiting a foreign country is sufficient grounds to establish relations with a foreign state.

In this case, Plaintiffs' contract for transport on international waters does not constitute time abroad for purposes of the Convention without some greater connection to a foreign state. Seabourn drafted and issued the Cruise Contract in the United States, Plaintiffs accepted the contract in the United States, Plaintiffs paid in U.S. currency in the United States, and Plaintiffs were to be transported on international waters. Unlike in Freudensprung, where a contract between two U.S. companies established that work was to be conducted on barges in West Africa, 379 F.3d 327 at 340–41, or Lander Co. v. MMP Investments, Inc., where two U.S. companies contracted for the distribution of U.S.-manufactured products in Poland, 107 F.3d 476 (7th Cir. 1997), here the Court finds no international element that establishes connection to a foreign state. The Court holds that the Convention does not apply because there is no indication that the parties' relationship is international in nature.[3]

---

[3] Because the Convention does not apply, this Court need not examine whether the more stringent requirements of the

**B. Application of the FAA**

Given that the parties' relationship lacks the international element required for the Convention to govern the contract, the remaining issue is whether the arbitration clause is enforceable under the FAA.[4] The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)).

In deciding whether arbitration is required under the FAA, courts must determine (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue. Id. at 1130. If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration clause in accordance with its terms. Id. In this case, Plaintiffs do not contest that the agreement encompasses the dispute at issue.

To the extent that Plaintiffs contest the validity of the arbitration agreement based upon their timely receipt of the contract, the Court finds that the terms of the agreement were reasonably

---

Convention have been met, namely whether both parties executed a signed writing to arbitrate, as the Convention requires. New York Convention art. II § 2 (defining "writing" as "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams"). Thus, Plaintiffs' reliance on Sen Mar, Inc. v. Tiger Petroleum Corp., 774 F. Supp. 879 (S.D.N.Y. 1991) is misplaced because in Sen Mar, the parties were a New York corporation and a Netherlands Antilles corporation, and arbitration was sought solely under the Convention.

[4] The Court notes that Plaintiffs rely on the Convention and do not contest arbitration under the FAA.

communicated to Plaintiffs. The terms of a cruise passenger ticket are binding on a passenger when they have been reasonably communicated to the passenger prior to departure. Oltman v. Holland Am. Line, Inc., 538 F.3d 1271, 1276 (9th Cir. 2008). Courts use a two-prong test to determine whether passengers are bound by the fine print of a ticket, which considers (1) the physical characteristics of the ticket, including the size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question; and (2) the circumstances surrounding the passenger's purchase and subsequent retention of the ticket or contract, including the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket. Id.

The physical characteristics of the ticket in this case reasonably communicated the arbitration clause to Plaintiffs. The contract includes a notice that the terms are important and binding:

> IMPORTANT NOTICE TO GUEST—READ CAREFULLY:
> THIS DOCUMENT IS A LEGALLY BINDING CONTRACT ISSUED BY SEABOURN CRUISE LINE TO, AND ACCEPTED BY, GUEST SUBJECT TO THE TERMS AND CONDITIONS BELOW. THE GUEST'S ATTENTION IS ESPECIALLY DIRECTED TO SECTIONS 1, 2, 9 AND 10, WHICH CONTAIN IMPORTANT LIMITATIONS ON THE GUEST'S RIGHTS TO ASSERT CLAIMS AGAINST SEABOURN, THE VESSEL, THEIR AGENTS, EMPLOYEES AND OTHERS.

Kidd Decl., docket no. 10, Ex. F at 31. The print appears at the top of the page, is the first introduction to the ticket terms, and appears in capital letters. Kidd Decl., docket no. 10, Ex. F at 31.

The circumstances surrounding receipt of the ticket were also reasonable because Plaintiffs expressly consented to the terms on November 28, 2010, when they completed the online registration, Kidd Decl., docket no. 10, Ex. C at 8; Ex. D at 12, and Plaintiffs received the Cruise Contract on two other occasions—first in Seabourn's pre-documentation packet, Kidd Decl., docket no. 9, Ex. A at 19, and second in Seabourn's final cruise documentation packet, Kidd Decl., docket no. 10, Ex. F at 40. Additionally, the complete terms of Seabourn's Cruise Contract were available on Seabourn's website at all times from June 2010 through March 2011. Kidd Decl., docket no. 7, at ¶ 8. The Court concludes that based upon the physical characteristics of the ticket and Plaintiffs' time to review the contract, the terms of the ticket contract are binding and the arbitration clause valid.

Plaintiffs' argument that Seabourn's cruise contract is illusory, and thus the arbitration clause non-binding, is not a matter for this Court to decide. Challenges to the validity of arbitration agreements can be divided into two types: Those that "challenge[] specifically the validity of the agreement to arbitrate" and those that "challenge[] the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006). "[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Id. at 449.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel Arbitration, docket no. 6, is GRANTED, and this case is STAYED pending arbitration.

Plaintiff's Motion for Summary Judgment, docket no. 14, is DENIED, and Seabourn's request to strike portions of reply on motion for partial summary judgment, docket no. 20, is STRICKEN as MOOT.

The Clerk is DIRECTED to send copies of this Order to all counsel of record, and to STAY this case.

IT IS SO ORDERED.

DATED this 9th day of April, 2012.

*Thomas S. Zilly*
THOMAS S. ZILLY
United States District Judge